[Civ. No. 25970. Second Dist., Div. Three. Nov. 13, 1962.]

GERALD CHAZAN, Plaintiff and Respondent, v. LOUIS MOST, Defendant and Appellant; RAYMOND L. STRAETER, Cross-defendant and Respondent.

Louis Most, in pro. per., for Defendant and Appellant.

Most & Davis for Plaintiff and Respondent, and Cross-defendant and Respondent.

FILES, J.—Plaintiff Gerald Chazan and defendant Louis Most were equal partners in the business of fire insurance adjusting from December 1957 until June 26, 1958, when the partnership was dissolved at Chazan's request. Chazan brought this action for an accounting. Most cross-complained against Chazan and Raymond L. Straeter, who had been an employee of the partnership, asking compensatory and exemplary damages for unfair competition. Straeter counterclaimed against Most for money due for services rendered to the partnership business.*

After a trial without a jury the court found that Most had possession and control of the assets and had not rendered any accounting; that the gross receipts were $12,496.07 and the expenses $11,254.64, resulting in a profit of $1,241.43, of which Chazan's share was $620.71; that Chazan had paid a partnership debt in the amount of $2,500 which he was entitled to have reimbursed, making a total of $3,120.71 due to Chazan; that Most was entitled to recover $10 from Chazan and $10 from Straeter on the cross-complaint; and that Straeter was entitled to $423.20 for his services. Judgment was entered for the net amounts due to Chazan and Straeter. Most has appealed from the judgment.

The evidence showed that Most handled all of the financial affairs of the partnership. Most was an attorney, and his law office was used as the headquarters of the fire adjusting business. No partnership books of account were kept. At the

*We do not concern ourselves with whether this was a proper counterclaim. The parties made no point of it either in the trial court or on appeal.

trial Most submitted three summaries of expenses incurred to July 30, 1958. Each list conflicted with the others in some respects. He admitted that his list of claimed partnership expenses included the full amount of the office rent, telephone and utilities for this period without making any segregation of expenses attributable to his law practice. Most testified that he had records showing what expenses he had charged to his law practice in his income tax returns. He was requested to produce these records, but he declined to do so. In the absence of any books of account or sufficient records from which an accurate account could be constructed, the trial judge made what he felt to be a fair allocation of expenses based upon the evidence before him. The finding as to the amount of the partnership expenses is supported by substantial evidence.

The findings of fact speak only of income, expense and profits, rather than assets, which are the subject of a partnership liquidation. However, it does not appear that this business had any assets except cash and accounts receivable, which were ultimately converted into cash. Hence an accounting of cash receipts and expenditures showing a profit in a stated amount supports the conclusion that, as of the date of the judgment, Most was chargeable with partnership cash in an amount equal to the profits plus Chazan's contribution of $2,500.

Most points out that the trial court made an error of computation when it found that the gross receipts of the partnership were $12,496.07. This figure was the total shown on a list prepared by Most showing fees which he had collected. The column of figures on the exhibit actually adds up to $10,817.03. One of the items in the column was $16.96. Apparently this item was struck on the adding machine as $1,696.00, thereby causing an error of $1,679.04 in the total. The record leaves no doubt that this erroneous total was the basis of the court's finding. This error may be cured by a modification of the judgment, reducing Chazan's recovery by $839.52, which is one-half of $1,679.04.

Most asks that the judgment be reversed because the trial judge determined the profits of the partnership without appointing a referee to take the account. There is no requirement that the trial court make a reference in an action for an accounting. (*Walsh* v. *Jack Rubin & Sons, Inc.,* 182 Cal.App.2d 652 [6 Cal.Rptr. 346].) The cases do hold, as Most contends, that a trial court has not fully performed

its duty in an accounting suit if it merely states the balance due. (See *Whann* v. *Doell,* 192 Cal. 680, 684 [221 P. 899]; *Garwick* v. *Gordon,* 121 Cal.App.2d 247, 251 [263 P.2d 125]; *Davis* v. *California Motors,* 73 Cal.App.2d 241, 246 [166 P.2d 52].) ▮ Defendant Most overlooks the fact that he is the one whose duty it was to account for the partnership funds, and it was plaintiff Chazan who demanded the accounting. Chazan is not now complaining that the account, as determined by the trial court, is not sufficiently detailed. The only way anyone could have stated the account in this case was to draw inferences from the testimony and from the incomplete figures which Most supplied, and make some reasonable allocations. Most did not request the trial court to make its findings of fact any more specific than they were. This court cannot say that Most was prejudiced by the form of the accounting which appears in the findings of the trial court.

Most complains that the trial court failed to allow him anything for his expenses or his services in winding up after the dissolution which occurred on June 26, 1958. Most submitted statements of claimed expenses and the trial court used these figures to arrive at the expenses which were allowed. Each list of expenses purported to cover a specified period, the latest ending July 30, 1958. Most testified that he estimated that of the $6,457.35 taken in as fees between June 23, 1958, and July 29, 1959, at least half would have been used up in expenses. The trial court was not required to accept that opinion which was not supported either by facts or convincing reasons.

Furthermore, the lists of expenditures submitted by Most under the heading "Expenses January 1, 1958 to July 30, 1958" contained items paid after that period. The cancelled checks which Most submitted to support his list of expenses for the period prior to dissolution included many checks written months after the dissolution. For example, on the list of expenses claimed for the period prior to July 30, 1958, one of the items was "Appraisers and Inventory Service $1,395.43." In support of this figure defendant submitted an envelope containing sixteen cancelled checks, totaling $1,395.43. One of these checks was dated August 12, 1958, and another was dated November 10, 1958. The trial court gave Most credit for these expenses paid after dissolution. The judgment actually gives Most credit for all of the expenses (both before and after dissolution) which he supported by cancelled checks, excepting only certain office expenses which

the court divided between the partnership and Most's individual law business.

Upon the evidence before it, the trial court was justified in concluding that the expenses which it allowed Most included all of the expenses which he could substantiate for the winding-up period.

The record is vague as to what services Most rendered after dissolution. Chazan testified that their procedure in adjusting fire losses had been for him to prepare the necessary documents and for Most to handle the negotiations. This would mean that under the agreed method of operation some of Most's duties on each case would necessarily be performed after Chazan had performed all of the services expected of him. There was no evidence from which the court could arrive at a dollar value to be placed on the services rendered by Most after dissolution. It also appears from the record that after dissolution Most carried on his own individual fire adjusting business at the same office and under the same name as was used by the partnership.

 The partnership agreement made no provision for compensation. The parties clearly intended to be governed by Corporations Code, section 15018, subdivision (f), which provides: "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

There is no merit in Most's contention that he is a "surviving partner." That term refers to the partner who survives after the death of the other. This statutory exception to the rule against compensation was enacted because the death of a partner necessarily leaves the entire burden of winding up upon the survivor, a situation which does not ordinarily occur if both partners are alive and competent. (See *Jacobson* v. *Wikholm,* 29 Cal.2d 24 [172 P.2d 878].) On this record we need not explore the circumstances under which a court might, on equitable grounds, award compensation to one of two living partners who has performed more than his share of the work in winding up and liquidation. (See *Osment* v. *McElrath,* 68 Cal. 466 [9 P. 731, 58 Am.Rep. 17]; *Ross* v. *Burr,* 69 Cal.App. 286 [230 P. 986]; 68 C.J.S., Partnership, § 395; 40 Am.Jur., Partnership, § 284.) Neither the pleadings nor the pretrial statement discloses any contention by Most that he was entitled to compensation. The evidence justified the trial court's conclusion that the account-

ing was to be made on the basis of equal participation by the two partners, without other compensation to either for services.

Most claims the court erred in awarding the plaintiff interest from December 1, 1958, the date when the court found the winding-up to have been completed. He relies on such cases as *Freese* v. *Smith,* 114 Cal.App.2d 283 [250 P.2d 261], holding that interest is ordinarily not allowed during the winding-up period. In the present case interest is justified by the fact that defendant was under a duty to render an account when the winding-up was completed, and he failed to do so. The court's finding that the winding-up was complete by December 1, 1958, appears to be supported by substantial evidence. The only activity which the record shows after that date was the receipt of $150 on July 29, 1959. Defendant has offered no excuse for not accounting on or before December 1, 1958. The fact that the amount due was then unliquidated was due solely to defendant's failure to keep proper books of account and to make a proper accounting to his partner. The law does not permit a defendant thus to profit by his own default. ▇▇ Where the accounting and distribution of partnership assets are delayed through the fault of the partner having possession, interest may be allowed from the date when the balance should have been ascertained and paid over. (*Luchs* v. *Ormsby,* 171 Cal.App.2d 377, 387 [340 P.2d 702].)

The records show that the last $150 to come into the partnership was not received until July 29, 1959. Interest should not have been allowed on Chazan's share of this money prior to the time when Most collected it. The judgment should be modified to correct this.

▇▇▇ Most also contends it was error for the court to fail to award him exemplary damages after finding the cross-defendants Chazan and Straeter guilty of unfair competition. The evidence showed and the court found that in July of 1958 the cross-defendants went into the fire adjusting business under a new business name without informing Most; and they adopted and used stationery and business cards similar to those used by Associated Fire Adjusters, which was the name used by the partnership prior to dissolution and by Most afterwards. The court found that by reason of this, Most was damaged in the sum of $10 by Chazan and $10 by Straeter.

The cross-complaint also alleged that cross-defendants had competed unfairly in some other respects, but the trial court

found that those allegations were not true. It thus appears that in the trial court's view of the evidence, the use of similar stationery and business cards was wrongful, but the cross-complainant sustained only nominal damage. The court made no finding that cross-defendants were guilty of oppression, fraud, or malice, which would have supported an award of exemplary damages (Civ. Code, § 3294) and, in effect, found the contrary when it declared that cross-complainant was not entitled to exemplary damages. The record justifies this result. Under the circumstances the absence of a specific factual finding is not prejudicial.

Inasmuch as the only errors in the judgment are matters of computation which the appellant should have called to the attention of the trial court, it is only fair that the appellant pay the costs of this appeal.

The judgment is modified as follows: The amount which plaintiff Chazan shall recover from defendant Most is reduced by $839.52, making the principal amount due $2,271.19. Of this sum, $2,196.19 shall bear interest at 7 per cent per annum from December 1, 1958, to the date of judgment, while the remaining $75 shall bear interest from July 29, 1959, to the date of judgment, making a total of $375.06 interest to be included in the judgment. As so modified the judgment is affirmed with costs to respondents.

Shinn, P. J., and Ford, J., concurred.