### JOE E. JOHNSTON V. E. W. BALLARD ET AL.

#### No. 3220.

1. **Partnership—Interest of Partners.**—In the absence of all precise stipulations between partners in respect to their respective shares in the profits and losses, and in absence of all other controlling evidence and circumstances, the rule of the common law is that they are to share equally in both, for in such case equality would seem to be equity. Story on Part., sec. 24. The rule we think should be extended further, and that where there is no evidence either direct or circumstantial as to their respective shares in the capital stock, the presumption is also that they hold equal interest.

2. **Partners Putting Unequal Amounts into the Stock.**—The fact alone that the partners have contributed to the partnership fund in unequal proportion may not be sufficient to show inequality in the profits, for the services of one may compensate the capital of the other, but it is itself a circumstance strongly tending to prove that upon final account each party is to be permitted to withdraw from the partnership fund the capital put in by him before a distribution among them of the firm property.

3. **Same.**—We conclude that although an unequal contribution to the capital on part of the respective partners may not in the absence of other evidence be sufficient to overcome the presumption of an equal participation in the profits, it is sufficient to show that the capital is not to be divided equally upon a final settlement and distribution.

4. **Partnership Books.**—In determining the rights of the partners in the partnership property when there is no direct evidence of the contract between them the partnership books may be considered. See example.

5. **Reports of Partnership Affairs — Evidence.** — A bookkeeper made out a statement of the partnership business, also of the account of each member of the firm with the business. The report was sent by one partner to the other. In suit against the party sending the report, he having admitted sending the statement as well of the partnership business as of the account of each member with the firm, it was error to admit the report of the business without the production also of the account of each member with the firm. They were parts of the same transaction.

6. **Fact Case.**—See facts upon which it is held that partners had the right to withdraw their capital before a division of the assets, one having bought the assets and the controversy being as to the amount of such assets purchased.

APPEAL from Dallas.    Tried below before Hon. R. E. BURKE.
The opinion states the case.

*Porter & Reed,* for appellant.—1. Statements or memoranda which accompany a letter form part of the letter itself, and must be introduced in evidence with the letter.    Appellees introduced letter of appellant to J. M. Ballard proposing dissolution of partnership and terms thereof, and, as part of said letter, statements of the liabilities and resources of the firm taken from its books; but failed to introduce similar statements of the amounts contributed by each member of the firm to its capital, as well as of the amounts drawn out by each member, which statements were also part of the letter, and were necessary to enable J. M. Ballard to ascertain the amount of his interest and enable him to elect whether to buy or sell his interest in said firm.

2.    The court erred in rendering judgment against defendant, because under the evidence plaintiffs failed to make out their case; in this, that they utterly failed to prove that the amount sued for or any part thereof was due and unpaid.    Whitaker v. Record, 25 Texas Sup., 382; Brackett v. Devine, Id., 195.

*Robert H. West,* for appellees.—The uncontroverted evidence showed that Ballard & Johnston were partners, and that Johnston bought Ballard out at what the books of the firm showed his interest to be worth, and took possession of all the property and collected all of the debts due the firm.    The judgment is in accordance with the verdict.

GAINES, ASSOCIATE JUSTICE.—The amended petition in this case shows that it is a suit by Mrs. Emma W. Ballard and her two minor children, as the widow and heirs of B. M. Ballard, deceased, to recover of appellant the purchase price of the decedent's interest in the partnership of Ballard & Johnston, a firm composed of deceased and appellant.    It was alleged that the firm had been dissolved, and that upon dissolution the defendant had purchased Ballard's interest and had agreed to pay him therefor whatever the partnership books disclosed that interest to be worth.    It was also alleged that no part of this had been paid.    The defendant in a special answer admitted the sale upon the terms alleged, and averred, that upon an incorrect statement of the partnership accounts made by the bookkeeper he had paid the deceased in his lifetime the sum of $326.72; that this payment was made by mistake, and that according to the books the decedent's interest in the firm assets amounted to the sum of $78.10 only.    He prayed judgment against the plaintiffs for the amount overpaid.    There was a verdict and judgment for plaintiffs for $275.

The principal question in the case is upon the sufficiency of the testimony to support a judgment for the plaintiffs, and this depends upon

the further question as to the shares of the respective partners in what was put into the concern by each. The evidence discloses that the books showed that Ballard, between the 2d of November, 1889, and the 16th of July, 1890, put.into the firm $289.80, and that he drew out $763.82; and that Johnston during the same period put in $2404.86, and drew out $240. Whether all money charged against Ballard was drawn out during the continuance of the partnership does not appear. According to the statement first made by the bookkeeper for a settlement between the parties, the assets of the firm exceeded its liabilities to third persons $2971.74; but the bookkeeper testified, that he had discovered errors in that statement, and that the books truly showed an excess of only $2428.35. It is evident that unless upon dissolution and in final account each party had an equal interest in the capital stock of the partnership, without reference to what each had put in, the evidence does not support the verdict. If the defendant Johnston was entitled to have the amount put into the concern by him repaid before distribution, then neither according to the statement prepared by the bookkeeper nor by the books themselves were the plaintiffs entitled to recover to the amount of the verdict. The question therefore arises, Does the evidence justify a finding that by the terms of the partnership agreement each partner was to own an equal interest in the entire capital stock of the business, without reference to the amount put into it by him, and that upon dissolution neither was entitled to a repayment of such an amount before a division of the assets? There seems to have been no articles of partnership, and there was no direct evidence of any character as to the terms of the partnership agreement. Mr. Justice Story says: "In the absence, however, of all precise stipulations between the partners in respect to their respective shares in the profits and losses, and in the absence of all other controlling evidence and circumstances, the rule of the common law is, that they are to share equally of both, for in such case equality would seem to be equity." Story on Part., sec. 24. The rule, we think, should be extended further, and that when there is no evidence either direct or circumstantial as to their respective shares in the capital stock, the presumption is also that they hold an equal interest. Northrop v. McGill, 27 Mich., 234; Farr v. Johnson, 25 Ill., 522; Roach v. Perry, 16 Ill., 37. The rule is founded upon the necessity of the case. Where there is no evidence except the mere fact that a partnership exists, a rule that the partners hold unequal shares in any distinct proportion would necessarily be arbitrary. But we know that each has some interest, and justice would seem to demand that their interests should be presumed to be equal. How inequality of interest in the absence of proof of some controlling circumstance could be arrived at, and especially the proportion of the respective interests, we are at a loss to conceive. But in this case we are not without evidence which tends to show that

the partners did not intend that they should be equally interested in the capital which was put into the concern—or to speak more accurately, that they did not intend that the partner who paid in the larger proportion of capital should not be compensated therefor in settlement upon dissolution.

The fact alone that the partners have contributed to the partnership fund in unequal proportion may not be sufficient to show inequality in the profits—for the services of the one may compensate the capital of the other—but it is itself a circumstance strongly tending to prove that upon final account each party was to be permitted to withdraw from the partnership fund the capital put in by him before there was to be a distribution among them of the firm property. We understand the authorities to so hold. The rule in regard to the presumed equality of shares is thus stated in a very accurate and concise treatise on the law of partnerships: "Subject to the right of each partner to be credited in account with the firm with the amount of capital actually brought in by him, * * * the shares of all the partners are presumed to be equal; and all the partners are entitled to share equally in the profits of the business, and must contribute equally toward the losses, whether of capital or otherwise." Poll. on Part., art. 32.

In Lindley on Partnership it is said: "When it is said that the shares of partners are prima facie equal, although their capitals are unequal, what is meant is, that the losses of capital, like other losses, must be shared equally; but it is not meant that on final settlement of account capitals contributed unequally are to be treated as one aggregate fund, which ought to be divided among the partners in equal shares." 2 Lind. on Part., p. 676. See also Id., 800, et seq., as to the mode of accounting. In Jackson v. Crapp, 32 Indiana, 422, there were written articles which stipulated that these persons should contribute to the partnership very unequal sums, and that they should divide the profits equally. The agreement was silent as to the distribution of the capital upon dissolution. It was held, that they were entitled to share in the capital stock not equally but in proportion to the respective amounts contributed by them. In Maley v. Brins, 120 Massachusetts, 324, the same doctrine is applied. We conclude, that although an unequal contribution to the capital on part of the respective partners may not in the absence of other evidence be sufficient to overcome the presumption of an equal participation in the profits, it is sufficient to show that the capital is not to be divided equally upon a final settlement and distribution. It is not unreasonable to presume that the use of the money of the partner furnishing the greater proportion of the capital is compensated by the services of the other, and that therefore they should share equally in the profits. But upon dissolution of such a partnership the latter necessarily retains his services, and it would seem just that the other should be entitled to withdraw his capital. The

reason is very cogent in cases where the partnership is to continue for a short period or may be determined at will. Jackson v. Crapp, supra.

In determining the rights of the partners in the partnership property, when there is no direct evidence of the contract between them the partnership books may be considered. Stewart v. Forbes, 1 McN. & G., 137. The statement from the books rendered in this case merely shows that each of the parties put in at certain dates certain sums, and upon other dates drew out other amounts. Whether they were put in as capital or advances does not appear; but in either case each party would upon final account be entitled to have the sum "put in" repaid him before the remaining assets should be divided. The bookkeeper did not claim to be an expert, and this probably accounts for the fact that the books do not show more clearly the rights of the parties.

We think, also, that in the absence of evidence as to terms of the partnership agreement the presumption of equality would extend not only to a participation in the property and profits of the concern, but that it would also be presumed that they were to contribute equally to the capital. The evidence we have in this case bearing upon the question tends to support rather than rebut that presumption. It is significant that the first entry of an amount put in by each of the partners shows that each of them, on November 20, 1889, paid in $241.65. The bookkeeper testified, that he did not know the terms of the contract, but heard defendant say to Ballard that the firm needed more money, and that he (Ballard) "must come up with his part. Defendant remarked, 'We must put in more money.' Ballard agreed to do so, but never put in any more." For these reasons the verdict ought to have been set aside.

We think, also, that the court in admitting in evidence the statement made out by the bookkeeper of the resources and liabilities of the firm should have required the production at the same time of the statement which showed the accounts between each of the partners and the firm. The bill of exceptions discloses that the evidence was allowed to be introduced upon the defendant's admission that he had sent the statement to Ballard. That admission was, however, coupled with the qualification that he sent at the same time the statement of the accounts between the firm and the respective partners. They should have been treated, under the circumstances, as parts of one statement. Although the plaintiffs may not have been required to offer the partners' accounts in evidence, they should have been required to produce them, so that the defendant might offer them if he saw fit. The defendant, however, secured the proof from another source, so that the error, if error it was, is not material.

In reference to the plea in reconvention, we may remark that unless the plaintiffs had received property or money from Ballard's estate the

defendant is not entitled to a judgment against them. If such is the fact, it ought be pleaded and proved as a condition precedent to any recovery by defendant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 19, 1892.